UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>AVANT, LLC,<br><br>Defendant. | Case No. 19-cv-2517<br><br>**COMPLAINT FOR PERMANENT INJUNCTION AND OTHER EQUITABLE RELIEF** |

Plaintiff, the Federal Trade Commission ("FTC"), for its Complaint alleges:

1. The FTC brings this action under Section 13(b) of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 53(b); Section 6 of the Telemarketing and Consumer Fraud and Abuse Prevention Act (the "Telemarketing Act"), 15 U.S.C. § 6105; and the Electronic Fund Transfer Act ("EFTA"), 15 U.S.C. §§ 1693-1693r, to obtain permanent injunctive relief, rescission or reformation of contracts, restitution, the refund of monies paid, disgorgement of ill-gotten monies, and other equitable relief for Defendant's acts or practices in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a); the FTC's Telemarketing Sales Rule ("TSR"), 16 C.F.R. Part 310; and EFTA and its implementing Regulation E, 12 C.F.R. § 1005.10.

**JURISDICTION AND VENUE**

2. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1337(a), and 1345, and 15 U.S.C. §§ 45(a) and 53(b).

1

3. Venue is proper in this district under 28 U.S.C. § 1391(b)(1)-(2), (c)(2), and (d), and 15 U.S.C. § 53(b).

## PLAINTIFF

4. The FTC is an independent agency of the United States government created by statute. 15 U.S.C. §§ 41-58. The FTC enforces Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), which prohibits unfair and deceptive acts or practices in or affecting commerce. The FTC also enforces the Telemarketing Act, 15 U.S.C. §§ 6101-6108. Pursuant to the Telemarketing Act, the FTC promulgated and enforces the TSR, 16 C.F.R. Part 310, which prohibits deceptive and abusive telemarketing acts or practices in or affecting commerce. The FTC also enforces EFTA, 15 U.S.C. §§ 1693-1693r, which provides individual consumer rights to participants in electronic fund transfer systems.

5. The FTC is authorized to initiate federal district court proceedings, by its own attorneys, to enjoin violations of the FTC Act, the TSR, and EFTA, and to secure such equitable relief as may be appropriate in each case, including rescission or reformation of contracts, restitution, the refund of monies paid, and the disgorgement of ill-gotten monies. 15 U.S.C. §§ 53(b) and 56(a)(2)(A).

## DEFENDANT

6. Defendant Avant, LLC ("Avant") is a Delaware corporation with its principal place of business in Chicago, Illinois. Avant transacts or has transacted business in this district and throughout the United States. At all times material to this Complaint, Avant has advertised, marketed, and distributed personal loans to consumers throughout the United States.

**COMMERCE**

7. At all material times to this Complaint, Avant has maintained a substantial course of trade in or affecting commerce, as "commerce" is defined in section 4 of the FTC Act, 15 U.S.C. § 44.

**DEFENDANT'S BUSINESS PRACTICES**

8. Since 2013, Avant has advertised, marketed, and offered loans to consumers online, with loan amounts ranging from $1,000 to $35,000. Avant handles all stages of the loan process and all consumer interactions including advertising, application processing, and all aspects of loan servicing, including collection of payments. The loans are formally issued by an FDIC-insured bank.

9. Avant has engaged in a pattern of deceptive and unfair conduct regarding consumers' payments and payment information. Avant has deceived consumers about its acceptance of credit and debit cards and has failed to timely apply paper payments. Avant has also deceived consumers about the amount needed to pay off their loans, and has collected or attempted to collect additional payments from consumers who have already paid the quoted payoff amount. In addition, Avant has charged payments that consumers did not authorize, including charging some consumers as many as eleven times in a single day. Avant's conduct has resulted in late fees and additional interest and caused consumers' credit to be damaged by false reports of defaults and deficiencies that many consumers have been unable to correct even after months of trying. Finally, Avant has taken payment by remotely created checks, which it is prohibited from doing in connection with telemarketing, and has conditioned the

extension of credit to those consumers on their pre-authorization of recurring electronic fund transfers.

## ILLEGAL PAYMENT METHODS, MISREPRESENTATION OF OTHER PAYMENT METHODS AND FAILURE TO TIMELY CREDIT CONSUMER PAYMENTS

10. As part of its loan application, Avant requires consumers to authorize Avant to initiate recurring electronic fund transfers or remotely created checks for consumers' periodic loan payments, as a condition of obtaining credit from Avant. Avant has engaged in telephone contact with consumers during the loan application process to induce the consumers to complete the application, in some instances by calling consumers who have started the application process and in other instances by helping consumers who call Avant begin the application over the telephone. Many of these consumers have used remotely created checks to make loan payments.

11. Avant is a telemarketer engaged in telemarketing as those terms are defined by the TSR. 16 C.F.R. § 310(ff) and (gg). The TSR prohibits telemarketers from using remotely created checks as payment for goods or services. 16 C.F.R. § 310.4(a)(9). Therefore, when engaged in telemarketing, Avant provides only one legal payment method as a condition of extending credit: electronic fund transfers.

12. Avant represents that after consumers complete the loan application, they can change their payment method and make payments using a number of payment methods. Avant's loan contract informs consumers that, they "may choose to repay by any other reasonable form of payment, including but not limited to paper check, money order, debit card or credit card." Avant's website also informs consumers that they can

4

make payments through a variety of methods, provides a list of the credit and debit cards Avant accepts, and states that Avant accepts paper checks, cashier checks, and money orders through the mail.

13. Despite this representation, Avant has rejected payments by credit or debit card.

14. In many instances, when consumers have contacted Avant to make payments by credit card or debit card, Avant has refused to accept those payments and told consumers that they must use a different payment method. As a result, some consumers have found themselves unable to make a payment towards their principal or to make a payoff on the date from which the quoted payoff amount is calculated because they needed additional time to arrange for a different form of payment. In many instances, as a result, consumers have been charged additional interest on their loans.

15. In response to many complaints from consumers who requested to make payments using a credit card or debit card, Avant has stated that its policy is not to accept such payments, even though it continues to represent the opposite in its contracts and on its website. For a time, Avant indicated that it would not accept credit or debit card payments over a certain amount in an article on the "FAQ" section of its website, but it subsequently removed that language while continuing to deny such payments.

16. In many other instances, Avant has failed to apply timely paper payments to the monthly payment amounts, instead charging consumers additional interest and late fees. In some cases, Avant failed to deposit paper checks or money orders or to credit deposited amounts to the consumers' accounts for many weeks. Avant has been aware of consumer complaints about mishandled paper payments, including many complaints from

5

consumers whose paper payments were not cashed or applied to their accounts for weeks or months after Avant received them, but Avant nevertheless has failed to institute routine mail handling controls, such as date-stamping envelopes when received, to ensure that the company timely processes paper payments.

### MISREPRESENTATION OF LOAN PAYOFF AMOUNT AND UNFAIR COLLECTION FROM PAID-OFF BORROWERS

17. Avant further represents to consumers through its website and loan contract that they can pay their loans early, either in full or in part, without incurring any fees or penalties. Consumers who wish to pay the entire balance of the loan prior to the end of the term can request a payoff quote from Avant. Because Avant charges daily simple interest on its loans, in which interest accrues each day instead of monthly, consumers cannot easily calculate the necessary payoff amount themselves, and the necessary payoff amount depends on the date on which the consumer will make the payoff. Consumers can request a payoff quote by contacting Avant via telephone, email, chat, or through Avant's online dashboard. In response, Avant will provide a payoff quote that is calculated for a particular date, and consumers can make the payoff on or before that date.

18. In many instances, consumers have paid the amount quoted on or before the date provided by Avant. In some of these instances, the consumers have received an email from Avant stating that their balance was paid in full. In some other instances, once a consumer made a payoff payment, the consumer received verbal confirmation from an Avant employee that the loan was paid off.

19. Despite these representations, in at least hundreds of instances after consumers have paid the quoted payoff amount, including instances where Avant has confirmed that the loan was paid off, Avant has later insisted that these consumers have not in fact paid off their loans and still owe Avant some additional amount of money. In some of these instances, Avant has stated that the prior payoff quote was erroneous. In other instances, Avant required consumers to make a regularly scheduled payment in addition to the payoff amount. For example, after one consumer paid the quoted payoff amount, Avant debited an additional payment from his account, resulting in the consumer incurring overdraft fees because the consumer's bank account lacked sufficient funds to cover the additional payment.

20. In many instances, Avant has assessed, collected, or attempted to collect additional payments from consumers who have paid their loans in full. In some instances, weeks or months after consumers have paid off their loans, Avant has called or sent emails telling them that they had outstanding balances. For example, one consumer received email confirmation that he had paid off his loan but months later began receiving collection emails and calls. Other consumers have learned about a past balance due only after Avant has deducted an additional payment from their bank account without prior warning, which in some instances has occurred weeks or months after the consumers paid the payoff amount quoted by Avant.

21. In many instances, Avant has charged consumers fees and additional interest that has accrued on their loans and charged consumers late fees for missing payments, after consumers had paid the amounts that Avant represented were sufficient to pay off their loans. Avant has charged consumers at least thousands of dollars in such

fees and interest. And in many cases, Avant has reported their loans as delinquent to a consumer reporting agency.

22. Consumers have contacted Avant after learning that Avant later deemed their loans not paid in full and after Avant's post-payoff collection attempts. Many consumers have spent weeks or months contacting Avant repeatedly in order to resolve outstanding balances that Avant claims they owe or to recover money Avant collected from them after payoff.

23. Avant has received hundreds of complaints from consumers about incorrect payoff quotes and subsequent collection efforts. In internal documents, Avant has acknowledged persistent, unaddressed problems with its payoff quotes and practice of taking additional payments after consumers pay the quoted payoff amount. Nevertheless, Avant has continued to provide payoff quotes to consumers, but not considered the loans fully paid when consumers have paid the amount quoted, and has assessed additional charges and attempted to collect additional amounts from those consumers.

## UNAUTHORIZED CHARGES

24. In at least hundreds of instances, Avant has withdrawn money from consumers' accounts or charged their credit cards without consumers' authorization, or in amounts in excess of the amount consumers authorized. These unauthorized charges have occurred in multiple ways.

25. In numerous instances, Avant has charged consumers duplicate payments without authorization, improperly taking consumers' monthly payments twice or more in one month. Monthly payment amounts are typically hundreds of dollars. For example,

one consumer's monthly payment was debited from his account eleven times in a single day.

26. In numerous other instances, Avant has taken consumers' monthly payment amounts even after those consumers have already paid off their loans. For example, one consumer's bank account was debited twice in September 2015 even though she had paid off her loan at least six months earlier.

27. In numerous other instances, Avant has taken the entire payoff balance of a consumer's loan without authorization. Payoff balances are typically at least hundreds of dollars. For example, one consumer called Avant's customer service number asking to lower his monthly payment, and instead was charged his entire balance.

28. In numerous other instances, Avant has taken a consumers' payoff balance twice. For example, one consumer attempted to pay off her loan by credit card, and Avant placed two charges on her card, each for the full payoff amount.

29. Many consumers only learn of Avant's unauthorized charges when they check their bank statements or credit card statements, or when they learn that their accounts have been overdrawn or that other payments they have made from their bank accounts have been rejected. In many instances, when consumers have called to complain about the charges, Avant has informed them that the unauthorized payments were caused by a "known issue."

30. As a result of Avant's unauthorized charges, many consumers are forced to pay overdraft fees, while other consumers are unable to pay other bills because they do not have access to the money that Avant improperly took. For example, one consumer's account was overdrawn by hundreds of dollars after Avant withdrew his monthly

payment three times in one day, causing him to incur two overdraft fees from his bank and fall behind with four other creditors who were unable to bill his account. In many instances, when consumers have complained about the unauthorized charges, Avant has insisted that the consumers authorized the charges and refused to provide a refund. In other instances, Avant has demanded that consumers provide documentation demonstrating that the unauthorized charges occurred, rather than simply checking its own records.

31. Despite hundreds of consumer complaints about unauthorized charges, and even though internal documents show that Avant has repeatedly acknowledged this problem, often blaming "system issues," Avant has continued to charge consumers without authorization.

## VIOLATIONS OF THE FTC ACT

32. Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), prohibits "unfair or deceptive acts or practices in or affecting commerce."

33. Misrepresentations or deceptive omissions of material fact constitute deceptive acts or practices prohibited by Section 5(a) of the FTC Act.

34. Acts or practices are unfair under Section 5 of the FTC Act if they cause or are likely to cause substantial injury to consumers that consumers cannot reasonably avoid themselves and that is not outweighed by countervailing benefits to consumers or competition. 15 U.S.C. § 45(n).

## Count I

35. In numerous instances, in connection with the advertising, marketing, promotion, offering for sale, sale, or servicing of loans, Avant has represented, directly or

10

indirectly, expressly or by implication, that it will accept payments by credit or debit cards.

36. In truth and in fact, in numerous instances, Avant has rejected payments made by credit and debit cards.

37. Therefore, Avant's representation as set forth in Paragraph 34 is false or misleading and constitutes a deceptive act or practice in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

## Count II

38. In numerous instances, in connection with the advertising, marketing, promotion, offering for sale, sale, or servicing of loans, Avant has failed to credit consumer payments made by paper check or money order in a timely manner.

39. Avant's actions cause or are likely to cause substantial injury to consumers that consumers cannot reasonably avoid themselves and that is not outweighed by countervailing benefits to consumers or competition.

40. Therefore, Avant's practices as described in Paragraph37 above constitute unfair acts or practices in violation of Section 5 of the FTC Act, 15 U.S.C. §§ 45(a) and 45(n).

## Count III

41. In numerous instances, in connection with the advertising, marketing, promotion, offering for sale, sale, or servicing of loans, Avant has represented, directly or indirectly, expressly or by implication, that if consumers pay a specified amount, their loan will be paid off.

42. In truth and in fact, in numerous instances in which Avant has made the representation set forth in Paragraph 40, and consumers have paid the specified amount, Avant has insisted the loan has not been paid off.

43. Therefore, Avant's representation as set forth in Paragraph 40 is false or misleading and constitutes a deceptive act or practice in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

## Count IV

44. In numerous instances, in connection with the advertising, marketing, promotion, offering for sale, sale, or servicing of loans, Avant has assessed, collected, or attempted to collect additional amounts from consumers who have paid the payoff amount quoted by Avant.

45. Avant's actions cause or are likely to cause substantial injury to consumers that consumers cannot reasonably avoid themselves and that is not outweighed by countervailing benefits to consumers or competition.

46. Therefore, Avant's practices as described in Paragraph 43 above constitute unfair acts or practices in violation of Section 5 of the FTC Act, 15 U.S.C. §§ 45(a) and 45(n).

## Count V

47. In numerous instances, Avant has withdrawn money from consumers' bank accounts or charged borrowers' credit cards without borrowers' authorization, or in amounts in excess of borrowers' authorization.

48. Avant's actions have caused substantial injury to consumers that consumers cannot reasonably avoid themselves and that is not outweighed by countervailing benefits to consumers or competition.

49. Therefore, Avant's practices as described in Paragraph 46 above constitute unfair acts or practices in violation of Section 5 of the FTC Act, 15 U.S.C. §§ 45(a) and 45(n).

## VIOLATIONS OF THE TELEMARKETING SALES RULE

50. Congress directed the FTC to prescribe rules prohibiting abusive and deceptive telemarketing acts or practices pursuant to the Telemarketing Act, 15 U.S.C. §§ 6101-6108. The FTC adopted the original TSR in 1995, extensively amended it in 2003, and amended certain provisions thereafter. 16 C.F.R. Part 310.

51. Avant is a "seller" or "telemarketer" engaged in "telemarketing" as defined by the TSR, 16 C.F.R. § 310.2(dd), (ff), and (gg). A "seller" means any person who, in connection with a telemarketing transaction, provides, offers to provide, or arranges for others to provide goods or services to a customer in exchange for consideration. 16 C.F.R. § 310.2(dd). A "telemarketer" means any person who, in connection with telemarketing, initiates or receives telephone calls to or from a customer or donor. 16 C.F.R. § 310.2(ff). "Telemarketing" means a plan, program, or campaign which is conducted to induce the purchase of goods or services or a charitable contribution, by use of one or more telephones and which involves more than one interstate telephone call. 16 C.F.R. § 310.2(gg).

52. The TSR prohibits sellers and telemarketers from creating or causing to be created, directly or indirectly, a remotely created payment order as payment for goods or

services offered or sold through telemarketing. 16 C.F.R. § 310.4(a)(9). A remotely created payment order includes a remotely created check. 16 C.F.R. § 310.2(cc).

53. Pursuant to Section 3(c) of the Telemarketing Act, 15 U.S.C. § 6102(c), and Section 18(d)(3) of the FTC Act, 15 U.S.C. § 57a(d)(3), a violation of the TSR constitutes an unfair or deceptive act or practice in or affecting commerce, in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

## Count VI

54. In numerous instances, Avant has created or caused to be created, directly or indirectly, a remotely created check as payment for goods or services offered or sold through telemarketing.

55. Avant's acts and practices, as described in Paragraph 53 of this Complaint, are abusive telemarketing acts or practices that violate Section 310.4(a)(9) of the TSR, 16 C.F.R. § 310.4(a)(9).

## VIOLATIONS OF EFTA AND REGULATION E

56. Avant is a "person" as this term is defined in Section 1005.2(j) of Regulation E, 12 C.F.R. § 1005.2(j).

57. Section 913(1) of EFTA, 15 U.S.C. § 1693k(1), provides that no person may condition the extension of credit to a consumer on such consumer's repayment by means of preauthorized electronic fund transfers.

58. Section 1005.10(e)(1) of Regulation E, 12 C.F.R. § 1005.10(e)(1), provides that "[n]o financial institution or other person may condition an extension of credit to a consumer on the consumer's repayment by preauthorized electronic fund transfers, except for credit extended under an overdraft credit plan or extended to maintain a

specified minimum balance in the consumer's account."

59. The Official Interpretation of Regulation E, Section 1005.10(e)(1), 12 C.F.R § 1005.10(e)(1)-1, Supp. I, provides that creditors may not require repayment of loans by electronic means on a preauthorized recurring basis.

60. Pursuant to Section 918(c) of EFTA, 15 U.S.C. § 1693o(c), every violation of EFTA and Regulation E constitutes a violation of the FTC Act.

## Count VII

61. In numerous instances, in connection with loans offered to consumers, Avant has conditioned the extension of credit on recurring preauthorized electronic fund transfers, thereby violating Section 913(1) of EFTA, 15 U.S.C. § 1693k(1), and Section 1005.10(e)(1) of Regulation E, 12 C.F.R § 1005.10(e)(1).

62. By engaging in the violations of EFTA and Regulation E set forth in Paragraph 60 of this Complaint, Avant has violated the FTC Act.

## CONSUMER INJURY

63. Consumers have suffered and will continue to suffer substantial injury as a result of Avant's violations of the FTC Act, the TSR, and EFTA and Regulation E. In addition, Avant has been unjustly enriched as a result of its unlawful acts or practices. Absent injunctive relief by this Court, Avant is likely to continue to injure consumers, reap unjust enrichment, and harm the public interest.

## THIS COURT'S POWER TO GRANT RELIEF

64. Section 13(b) of the FTC Act, 15 U.S.C. § 53(b) empowers this Court to grant injunctive and such other relief as the Court may deem appropriate to halt and redress violations of any provision of law enforced by the FTC. The Court, in the

exercise of its equitable jurisdiction, may award ancillary relief, including rescission or reformation of contracts, restitution, the refund of monies paid, and the disgorgement of ill-gotten monies, to prevent and remedy any violation of any provision of law enforced by the FTC.

## PRAYER FOR RELIEF

Wherefore, Plaintiff FTC, pursuant to Section 13(b) of the FTC Act, 15 U.S.C. § 53(b), and Section 6(b) of the Telemarketing Act, 15 U.S.C. § 6105(b), and the Court's own equitable powers, requests that the Court:

A.  Enter a permanent injunction to prevent future violations of the FTC Act, the TSR, and EFTA and Regulation E by Defendant;

B.  Award such relief as the Court finds necessary to redress injury to consumers resulting from Defendant's violations of the FTC Act, the TSR, EFTA and Regulation E, including but not limited to, rescission or reformation of contracts, restitution, the refund of monies paid, and the disgorgement of ill-gotten monies; and

C.  Award Plaintiff the costs of bringing this action, as well as such other and additional relief as the Court may determine to be just and proper.

Dated: 4/15/19

Respectfully submitted,

ALDEN F. ABBOTT
General Counsel

*[signature]*

LISA A. ROTHFARB
DANIEL O. HANKS
Federal Trade Commission
600 Pennsylvania Avenue, N.W.
Washington, D.C. 20580
Phone: (202) 326-2602, (202) 326-2472
Facsimile: (202) 326-3768
Email: lrothfarb@ftc.gov; dhanks@ftc.gov

KATHARINE ROLLER
Federal Trade Commission
230 South Dearborn Street
Suite 3030
Chicago, IL 60604
Phone: (312) 960-5605
Email: kroller@ftc.gov

Attorneys for Plaintiff